## Gulf, Colorado & Santa Fe Railway Company v. Oceana Johnson, by Next Friend.

### Decided March 11, 1902.

**1.—Railway Company—Setting Out Fire—Evidence.**

Upon the issue whether a fire set in plaintiff's house in July, 1894, while trees between the house and the railroad were in leaf, was set by sparks from a certain engine No. 78, evidence that a subsequent occupant of the house in March, 1895, found cinders in the gutters on the roof and the water in the cistern black, was too remote to be admissible.

**2.—Witness—Impeachment—Deposition.**

Where a witness who had testified by deposition for plaintiff also testified by deposition taken in behalf of defendant, plaintiff could not attack her latter testimony by impeaching her credibility, for which he had vouched in making her his own witness.

**3.—Pleading—Negligence—Issue—Competency of Servants.**

Where plaintiff's petition alleged as negligence defective appliances upon the engine and the negligent and careless manner in which the servants operated it, but not their incompetency, the question of their competency was not an issue, and its submission was error.

**4.—Railway Company—Liability for Fires from Engine.**

A railway company is not liable for fires set by sparks from its engine where the engine is properly equipped with appliances to prevent the escape of sparks and is properly and carefully handled, even though the employes operating it are incompetent.

**5.—Same—Proof of Setting Fire—Burden—Preponderance.**

Evidence showing that a fire was caused by sparks from defendant's engine makes a prima facie case such as entitles plaintiff to recover, unless rebutted, but defendant is required only to meet such case, and not to establish by a preponderance of evidence that it was not negligent.

Appeal from Harris. Tried below before Hon. Wm. H. Wilson.

*J. W. Terry* and *Chas. K. Lee,* for appellant.

*Burke & Griggs,* for appellee.

PLEASANTS, Associate Justice.—Appellee, by her next friend, W. T. Johnson, brought this suit to recover damages for personal injuries alleged to have been caused by the negligence of appellant. The circum-

stances under which appellee received the injuries complained of and the negligence of the appellant by which such injuries are alleged to have been caused are stated in the petition as follows:

"That on or about the said 1st day of July, 1894, while the plaintiff, Oceana Johnson lay in her crib or cradle in her said home, and over which said cradle was thrown a mosquito bar or netting, a passing locomotive or engine No. 78 of the defendant company, to which were attached a long train of cars, by reason of defective machinery and appliances upon the said locomotive or engine, and the negligent and careless manner of the operation thereof by the said defendant, its agents, servants, and employes, the said engine or locomotive No. 78 emitted and threw live sparks of fire and burning cinders into plaintiff's said home and upon the said cradle of said Oceana, igniting the clothing therein, and the said fire once so started quickly communicated to the clothing and person of the said infant child, Oceana Johnson, who then and at that time was about three months old, and being entirely helpless and unable to extricate herself from said burning couch, the said Oceana Johnson was burned," etc.

Appellant answered by general demurrer and general denial. The trial of the case in the court below by a jury resulted in a verdict and judgment in favor of appellee for $4500, from which judgment this appeal is prosecuted.

The conclusion we have reached as to the proper disposition of this appeal renders a statement of the facts unnecessary, and for the purposes of this opinion it is sufficient to say that the evidence upon all the material issues in the case was conflicting. There is evidence in the record tending to establish the allegations of the petition that the fire was caused by sparks emitted from appellant's engine No. 78, and that said engine was not properly equipped with spark-arresting appliances, and was operated in a negligent and careless manner by appellant's servants at the time said sparks were thrown. On the other hand, appellant introduced evidence which tends to show that the fire was not caused by sparks thrown from its engine, and that said engine was equipped with the best known appliances for preventing the escape of sparks, and was being properly and carefully operated at the time the fire occurred.

Plaintiff was allowed to show by the witness Wood, that just after he moved into the house which was occupied by the plaintiff at the time of the accident he had the gutters and rain troughs attached to the house cleaned out and found a quantity of cinders in said gutters on that side of the house next to the railroad track of appellant, and that he also had the cistern on said place cleaned out, and that the water found in the cistern was very black. This testimony was objected to by the defendant on the ground that it showed a condition existing several months after the injury complained of and was irrelevant and immaterial, and did not tend to show the condition of the engine which plaintiff alleged caused the injury. We think the objections to this testimony should have

been sustained. The record shows that the injury to plaintiff occurred about the 1st of July, 1894, and that the witness moved into the house formerly occupied by plaintiff some time in March, 1895. It was also shown that there were several trees in plaintiff's yard near the house and between it and the railroad track, which at the time of the injury were full of leaves and in thick foliage. The fact that eight or nine months after the injury cinders were found in the gutters on the house, and that the water in the cistern was black, in no way tended to show that the fire by which plaintiff was injured was caused by sparks or cinders thrown by engine No. 78 as alleged by plaintiff. The fact that cinders from some of the numerous engines that passed plaintiff's house, after the blasts of winter had stripped the trees before mentioned of their foliage, may have fallen upon the house, does not tend to show that cinders from an engine could have been thrown into or even upon said house at the time of the injury, when said trees were covered with foliage, nor does it tend to show that engine No. 78 ever threw any sparks or cinders into said house.

We are of opinion that the circumstances established by this evidence are too remote to be material to any issue in the case, and the evidence should have been excluded.

One of the witnesses, Mrs. J. A. Downs, who testified by deposition for plaintiff, also testified by deposition for the defendant, and in rebuttal of the testimony of this witness given for defendant, plaintiff offered the testimony of the witness R. L. Whitehead, the notary who took the depositions of said witness which were introduced by the defendant. In offering the testimony of the notary, plaintiff's attorney made the following statement: "This is a set of depositions by Mrs. Downs which the defendant read in evidence. I want to introduce this witness for the purpose of showing her manner and conduct at the time this notary went there to take her depositions, that the jury may judge of her actions and of the character of her testimony; that a part of her testimony in this very deposition may be rebutted. If the witness were before the jury they could judge of the credibility of her testimony. They could form that judgment partially by actions as well as by word of mouth. She has testified in here that she has not seen a soul connected with the defendant in this case; has not talked to anybody, and I propose to show by this witness who took that deposition, the manner of her actions and what she said during the time that he was taking her deposition."

Defendant excepted to these remarks of plaintiff's counsel, on the ground that the proposed evidence was inadmissible and the statements of counsel were made for the purpose of influencing the jury and were improper. The court then, over defendant's objection, had the jury withdrawn, and having heard the statements of the witness, allowed him to testify before the jury as follows:

"Q. You are a notary public?

"A. I am, sir.

"Q. You took this deposition of Mrs. Julia A. Downs, in October, 1900?

"A. I did, sir.

"Q. State to the jury what you said to her when you stepped upon the porch, and what she said to you, and what you did and what she did regarding the taking of this deposition, just in the words and actions as near as you can repeat it.

"A. There is a gallery to this house; a front gallery. I stepped upon the gallery, and there were three ladies in the room. I knocked upon the door, and asked for Mrs. Downs. I had never seen any of the ladies previous to that time. Mrs. Downs was shown to me, and I introduced myself to her, and told her I had come to take her deposition. She asked me if I came from Mr. Dupree. I had these interrogatories in my hand, and I says, 'I have the questions Mr. Dupree has propounded,' and I showed her Mr. Dupree's signature. She told me it was a good thing I had come, because the other parties had been there yesterday, and asked me to come in. She wanted me to take the deposition in the front room, but I suggested to her that we go in the back room, where we would not be disturbed by the other ladies, and we went back there. I sat down like at this table, and she sat right where Mr. Blodgett is now in answering questions.

"Q. Now, what, if anything, did she say to you when you read any of those interrogatories in regard to writing down?

"A. There were some of these interrogatories, I don't know which ones they were, and when I read them to her, she said to me, 'You know how it ought to be; just write it down.' That was her statement. I replied to her, no; I wanted to put it down just as she stated it, word for word, and as nearly in her own language as I could."

The defendant objected to this testimony, on the ground: "(1) That the same was hearsay testimony. (2) That the witness could not in such manner affect the evidence taken before him as a notary public to which he had certified; that he could not go behind his certificate as an officer and affect the credibility of the evidence in the manner and form in which her deposition was taken, and that the same was calculated to create prejudice against the defendant in the minds of the jury."

The evident purpose of the plaintiff's counsel in introducing this testimony as shown by his remarks and by the testimony was to attack the credibility of the witness Mrs. Downs, and to prejudice the jury against the witness by showing that she did not want to give her testimony to any notary who had not been sent to her by defendant's attorney, Mr. Dupree.

We know of no rule of evidence under which this testimony was admissible. The testimony of the notary as to any statement made by Mrs. Downs to him was clearly hearsay if introduced for the purpose of proving the truth of such statements. If such testimony was introduced for the purpose of impeaching Mrs. Downs it was inadmissible, because no proper predicate had been laid. If it be conceded that Mrs.

Downs testified, as stated by counsel for plaintiff, that she had not seen or talked to anyone connected with the defendant in regard to the case, there is nothing in the testimony of the notary to contradict her upon this point, and there is no pretense that any predicate was laid for the introduction of any other statement made by her to the notary. But aside from all this the evidence was inadmissible for the reason that Mrs. Downs was plaintiff's witness and her credibility could not be assailed by plaintiff; having vouched for the credibility of the witness plaintiff can not be heard to impeach her. Baxton v. Boyce, 1 Texas, 325; Goree v. Goree, 54 S. W. Rep., 1036.

The charge of the court contains the following paragraphs:

"And if you find from the evidence that the plaintiff has proven these facts by a preponderance of the evidence, then the burden would be upon the defendant to prove by a preponderance of the evidence that such sparks, if any, in escaping from defendants locomotive, were not caused by any negligence of the defendant or its employes, or to prove the existence of such state of facts as in the third paragraph of this charge you have been instructed would, if proven, absolve the defendant from liability,—that is to say, if from the evidence you believe that sparks escaped from defendant's engine and set fire to the bed and clothing of the plaintiff, Oceana Johnson, and that said fire so communicated to the bed and clothing of plaintiff injured her, then such state of facts being proven would constitute a prima facie case of negligence on the part of defendant, and in the absence of rebutting evidence sufficient to overcome such prima facie case of negligence, you should render a verdict for the plaintiff.

"If, however, from the evidence you believe that sparks of fire escaped from defendant's engine and set out the fire which caused the plaintiff's injuries, but that the engine from which said sparks escaped, if any, was at the time the said fire was set out equipped with spark-arresters and appliances which practical experience has proven to be among the best known to prevent the escape of sparks, fire, or cinders from locomotives, and that such appliances and apparatus were in good order at the time the fire was set out; and that said engine was then being operated by competent employes, and was operated with ordinary care to prevent the escape of sparks, then in such a state of facts you are instructed that a prima facie case, if any, made by the escape of sparks and fire would be rebuttal, and in such a state of facts, if any, you should find for the defendant.

"But if from the evidence you believe that the fire was caused by a spark or sparks emitted from the defendants engine, and that defendant has failed to equip its engine to prevent sparks, if any, escaping, with spark-arresters found by practical experience to be among the best known to prevent the escape of sparks, fire, or cinders, or that the agents or employes of the defendant engaged in operating said engine failed to use ordinary care to prevent the escape of sparks, or that such appliances, if any, were not in good order, or that said engine was not operated by

competent employes, then in such a state of facts you are instructed that a prima facie case, if any, made out by proof of sparks escaping and causing fire, would not be rebutted, and you should in such a state of facts, if any, return a verdict for the plaintiff.

"Therefore, if you believe from the evidence that the fire complained of by the plaintiff originated from sparks emitted from an engine of the defendant, and if you further believe from the evidence that said engine at the time said fire was set out was equipped with apparatus and appliances which practical experience has proven to be among the best known to prevent the escape of sparks, fire, or cinders from locomotives; and that such appliances and apparatus were in good order at the time the fire is alleged to have been set out; and if you further believe that said engine was at the time said fire was set out, carefully operated by competent and skillful employes, then, although you may further believe that the fire did originate from sparks emitted from an engine of the defendant, you will in such event (if you so find the facts) find for defendant."

These paragraphs of the charge are assailed by appellant on the grounds that they present an issue not made by the pleading and evidence, are upon the weight of the evidence, and erroneously instruct the jury as to the burden of proof.

We think it clear that the charge is open to the first of these objections. Plaintiff's petition does not allege as a ground of negligence the incompetence of the employes of defendant who were operating the engine at the time the fire occurred, and the competency or incompetency of such employes was not an issue in the case. No rule of law is more firmly fixed by the decisions of our courts than the rule which forbids a trial court to submit to the jury by his charge an issue not raised by the pleading in the case. The violation of this rule in the charge above quoted was manifestly prejudicial to the defendant.

If the jury believed from the evidence the engine in question was properly equipped with appliances to prevent the escape of sparks and was properly and carefully handled, the defendant was entitled to a verdict even though the jury believed from the evidence that the fire was caused by sparks thrown by the engine, and yet this charge in effect instructs the jury that they could not upon this state of facts find for the defendant unless they further found that the persons operating said engine were competent. Railway v. Vieno, 26 S. W. Rep., 230; Railway v. Gilmore, 62 Texas, 391.

It occurs to us that this charge would have been erroneous even if plaintiff had alleged the incompetency of the employes as one of the grounds of negligence, because if the engine was properly equipped and properly and carefully handled on the occasion in question, defendant would be entitled to a verdict regardless of whether the employes operating the engine were or were not generally incompetent.

We are also of the opinion that the charge is erroneous in its application of the rule as to the burden of proof. While it is well settled that

in cases of this character it is proper for the court to instruct the jury that proof on the part of plaintiff that the fire was caused by sparks thrown by the engine presents a prima facie case which would entitle plaintiff to recover unless rebutted by the defendants, we do not think it proper for the court to instruct the jury that the burden in such case is upon the defendant to show by the *preponderance* of the evidence that it was not guilty of negligence. We understand the rule to be, that if the jury find from the evidence that the fire was caused by the engine they should find for the plaintiff unless the defendant meets such prima facie case by evidence showing that the engine was in proper condition and properly handled. But when the defendant introduces evidence which standing alone would be sufficient to rebut the presumption of negligence arising from the setting out of the fire by its engine, the jury, to find for the plaintiff, must believe from the whole case thus made that the plaintiff has shown by a preponderance of the evidence that the defendant was guilty of negligence. Any other rule would shift the burden of proof from the plaintiff to the defendant, which the Supreme Court on the former appeal of this case say is not done by permitting the court to instruct the jury that proof that the engine set out the fire presents a prima facie case which must be met by the defendant.

In case of Railway v. Hutchens, 63 Southwestern Reporter, 1069, there are expressions which seem to conflict with the views here expressed, but the question under consideration in that case did not directly involve the issue presented here, and our statement of the rule in that case was not entirely accurate.

We have not considered the assignment which assails the verdict as being unsupported by the evidence, because in view of another trial it would not be proper for us to express any opinion upon the evidence.

The remaining assignments do not in our opinion present any reversible error, or any error which is likely to occur upon another trial of the case, and it would serve no useful purpose to discuss them.

For the errors before indicated the judgment of the court below is reversed and this cause remanded for a new trial.

*Reversed and remanded.*

### ON MOTION OF APPELLEE.

GARRETT, Chief Justice.—On the 27th day of February ultimo this court rendered judgment in the above entitled cause reversing the judgment of the court below and remanding the cause for another trial, but the opinion of the court stating the reasons for reversing the judgment was not filed until the 11th day of March, instant. The appellee has filed a motion requesting the court to extend the time allowed by law in which to file a motion for rehearing, stating that it was impracticable to prepare such motion until after the opinion had been filed showing the reasons for reversal.

Vol. 28 Civil—26.

It is provided by article 1030, Revised Statutes, that any party desiring a rehearing of any matter determined by a Court of Civil Appeals may, within fifteen days ofter the date of the entry of the judgment or decision of the court, or the filing of the findings of fact and conclusions of law, file with the clerk of the court his motion in writing for a rehearing thereof. Article 1039 requires a conclusion of the law and facts of a cause to be filed within thirty days after it' has been decided; provided, that where a cause has been reversed then the court shall file reasons for reversing the same. It has been the practice in this court to announce the decision of causes from the bench and afterwards to file opinions therein stating the conclusions of law and facts in causes finally disposed of and of which the Supreme Court had jurisdiction to grant a writ of error, and in causes reversed and remanded for another trial to state the reasons for reversal, and sometimes several days have elapsed before the opinion has been filed. In causes in which a conclusion of law and fact is required, the law in terms allows fifteen days after the filing in which to file a motion for rehearing. While perhaps the same rule is not made applicable by the statute to motions for a rehearing in causes that have been reversed and remanded, yet it has been the practice of this court to so apply it, and the party desiring to file a motion for rehearing in such causes is allowed to do so within fifteen days after the filing of the opinion without necessity of making application for leave. The appellee will be allowed fifteen days from the date of the filing of the opinion in which to file her motion for rehearing.

                                                                Motion granted.